IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURA ANN SMITH,

       Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

       Defendant.

Civ. No. 3:16-cv-01966-MC

OPINION AND ORDER

MCSHANE, Judge:

       Plaintiff Laura Ann Smith ("Smith") seeks judicial review of the Commissioner's decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the decision is AFFIRMED.

## BACKGROUND

       Smith filed her application on May 15, 2012, alleging disability as of May 1, 2011. Tr. 106, 226.[1] After the Commissioner denied the application initially and upon reconsideration, Smith requested a hearing before an administrative law judge ("ALJ"), which was held on June 24, 2014. Tr. 57-93. At the hearing, the ALJ determined that a consultative psychiatric examination was needed before a decision could be made, and following the examination, a

---

[1] "Tr." refers to the transcript of the Social Security Administration's ("SSA") administrative record.

1 - OPINION AND ORDER

supplemental hearing was convened on May 6, 2015. Tr. 38-52. On May 12, 2015, ALJ Riley J. Atkins issued a written decision finding Smith not disabled. Tr. 12-29. On August 12, 2016, the Appeals Council denied Smith's subsequent request for review, so the ALJ's decision became the final decision of the Commissioner. Tr. 1-3. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, I review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") utilizes a five-step sequential evaluation to determine disability. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of

proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is found not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step two, the ALJ concluded that Smith had the following severe impairments: fibromyalgia; status post bilateral knee replacement; "a condition described [as] bipolar disorder"; and anxiety. Tr. 14. Between steps three and four, the ALJ assessed Smith's RFC. He determined Smith retains the capacity to perform light work, with the following caveats: she should avoid concentrated exposure to severe workplace hazards (*i.e.* working around heights or around machinery with moving parts); she could sustain concentration, persistence, and pace for simple routine repetitive tasks of 1-3 steps, she might be able to engage in more complex tasks on an occasional basis, but could not sustain more complex work; she should not be required to work with the public on more than an occasional or infrequent basis; and she can engage in brief, routine interactions with coworkers and supervisors. Tr. 17. At step four, the ALJ found Smith could not perform any past relevant work. Tr. 27. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Smith could perform jobs that exist in significant numbers in the national economy, including small products assembler and price marker. Tr. 28. Accordingly, the ALJ found Smith not disabled. Tr. 28-29.

3 - OPINION AND ORDER

Smith contends the ALJ: (1) erroneously discredited her symptom testimony; (2) erroneously discredited the opinions of treating and examining physicians; (3) failed to incorporate the testimony of lay witnesses; and (4) failed to identify jobs consistent with Smith's RFC at step five.

**I. Credibility Analysis**

Smith argues the ALJ erred by rejecting her subjective symptom testimony. An ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Smith argues that the ALJ erroneously attributed her complaints of fatigue to "medication side effects" rather than her diagnosed fibromyalgia. Tr. 19. The record reflects that Smith took clonazepam as prescribed for insomnia, although at least one provider indicated that her

insomnia was related to her chronic pain and fibromyalgia symptoms. *See* Tr. 604, 606, 607, 619. The ALJ clearly considered Smith's various impairments, including fibromyalgia, in his extensive analysis of how the medical record compared to Smith's various pain symptoms, consistent with SSR 12-2p. *See* Tr. 19-20. Contrary to Smith's contention, the ALJ *accepted* Smith's fatigue allegations to a degree, but found that fibromyalgia was not likely the sole cause, based on Smith's primary care physician's concern about drug interactions and subsequent discontinuation of clonazepam. Tr. 19. Further, the ALJ found that despite Smith's allegation of disabling fatigue, her treating providers made few observations of fatigue, while clinical examinations generally reflected full range of motion in all joints aside from her surgically-repaired knees, normal gait, and full muscle tone. Tr. 19-20, 306-07, 353-54, 527. As such, the objective evidence did not support the alleged severity of Smith's fibromyalgia and other pain symptoms.

Smith also argues the ALJ erroneously discounted her psychiatric symptom testimony based on conservative treatment. While I acknowledge that claimants with mental impairments should not be "punished" for failing to demonstrate "impeccable judgment" in pursuing proper treatment, the ALJ did not do so here. *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Instead, the ALJ carefully summarized the record of Smith's mental health treatment, which included some unexplained gaps, her declining an inpatient stay, and failure to pursue therapy through the date of the decision. Tr. 20-21. Although Smith argues these treatment gaps are due to financial barriers, the record reflects that Smith was insured throughout the adjudicative period. Tr. 76-79.

Smith also argues that the ALJ erroneously found her activities of daily living were inconsistent with her allegations of disabling pain and mental limitations. However, as the ALJ

noted, Smith testified that she is able to manage living on her own for weeks at a time while her husband is out of town, including caring for dozens of chickens, several goats, and other household pets. Tr. 65, 628-29. The ALJ reasonably found such chores inconsistent with Smith's alleged inability to carry out a routine, constant body pain, and unsteadiness on her feet. Tr. 236. Similarly, although Smith alleges that her bipolar condition and anxiety are severely limiting, she indicated that she is able to grocery shop, go to dinner with her husband, and visit with other family members. Tr. 628-29.

Accordingly, the ALJ provided a number of valid reasons to question the veracity of Smith's symptom complaints, which is sufficient to affirm. The ALJ's credibility analysis was detailed, specific, and consistent with the record as a whole. Accordingly, I do not reach Smith's remaining assignments of error as to credibility, as any further error is harmless. *Batson*, 359 F.3d at 1197.

## II. Medical Opinion Evidence

An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must give clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ

must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted). On this record, the treating and examining doctors' opinions are contradicted by the state medical examiners. Tr. 20-21. Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison*, 759 F.3d 995, 1012 (9th Cir. 2014).

**A. Michele Lecher, Psy.D.**

Dr. Lecher, a treating physician, completed a medical source statement in August 2014. Tr. 643-46. The doctor diagnosed bipolar disorder I, opined that Smith experienced more than four episodes of decompensation lasting at least two weeks during the preceding months, and would have *no* consistent ability to perform the following activities in sustained employment: ability to use public transit; understand, remember, and carry out detailed but uninvolved instructions; maintain attention for extended periods lasting two hours each; maintain adequate attendance; coordinate in close proximity with others without unduly distracting them; complete a normal workday and workweek without the interference of psychologically-based symptoms; take appropriate precautions around workplace hazards; and respond appropriately to changes in the work setting. Tr. 645. Dr. Lecher further opined that Smith had "marked" or "extreme" limitations in activities of daily living; social functioning; and concentration, persistence, or pace. *Id.* Dr. Lecher also assessed physical limitations arising from body pain and lack of mobility. Tr. 643. The ALJ rejected these opinions, finding that the doctor's assessments were unsupported by her treatment notes, and inconsistent with other evidence of record, including examining psychologist Dr. Kruger, and the state agency reviewing physicians. Tr. 24.

After careful review, I agree with the ALJ's finding that Dr. Lecher's chart notes document very few objective signs of mental symptoms. Tr. 24, 657-68. Consistent with the ALJ's findings and the Commissioner's argument, Dr. Lecher's notes are fairly characterized as recitations of Smith's family history and reported personal stressors, do not document any evidence of clinical testing, and are generally devoid even of objective clinical observations of Smith's symptoms. *See* Tr. 657-68. Although I recognize that psychological evaluation necessarily involves a degree of self-reporting on the part of a patient, Dr. Lecher's notes contain minimal analysis of signs or clinical findings, and thus amount to little more than reiterations of Smith's reported family history and contemporaneous activities. *Id.*; *cf. Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008); 20 C.F.R. §§ 404.1529(c)(2). To the extent the evidence is arguably susceptible to an alternative interpretation, I am nevertheless compelled to affirm the ALJ's rational interpretation. *See* Pl.'s Br. 12-13; *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

Notably, Dr. Lecher opined that Smith had experienced four or more episodes of decompensation lasting at least two weeks, which the ALJ found suggested that the doctor was "not familiar with how episodes of decompensation are evaluated in Social Security disability adjudications." Tr. 24. Smith argues the ALJ erred, because such episodes do not necessarily require a claimant to be hospitalized under the Act. Pl.'s Br. 12. Rather, contends Smith, such episodes include "temporary increases in symptoms demonstrated by factors other than hospitalization, including the need to significantly alter a claimant's medications." *Id.* In support, Smith argues that Dr. Lecher's notes show a "pattern of instability and a requirement to significantly alter Smith's medications" consistent with an episode of decompensation. Although Smith asserts that Dr. Lecher's notes (and notes from another provider) demonstrate a

requirement to significantly alter Smith's medications sufficient to qualify as an episode of decompensation under the regulations, I find the evidence does not reflect anything more than occasional adjustments of medications and dosages. Tr. 465-77, 541-45, 556-58. Smith further argues that the ALJ erred to the extent he stated that episodes of decompensation necessarily require inpatient hospitalization; however, even if the ALJ erred in this respect, the error was harmless because medication adjustments were made over time, as is typical in mental health treatment. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (Court will only reverse based on harmful error). Finally, despite Smith's assertion, the ALJ appropriately considered Dr. Lecher's relatively short treatment duration of one month, in addition to other factors, in weighing her opinion. 20 C.F.R. § 404.1527(c)(2)(i) (ALJ may consider duration of treatment history in weighing medical opinions).

**B. Olwyn K. Davies, M.D.**

Smith argues that the ALJ erroneously rejected the medical opinions provided by treating physician Dr. Davies. The ALJ provided a thorough review and assessment of the opinions provided by Dr. Davies, and ultimately accorded them little weight. *See* Tr. 24-26, 372-73, 378-83. In the first assessment of April 2012, the doctor indicated Smith could occasionally sit, stand, walk, firmly grasp, or perform repetitive activities with her right hand, and that the limitations were ongoing, with "no end in sight." Tr. 372. In the second assessment, produced just days after the first, Dr. Davies opined that Smith would need to rest for four hours in an eight-hour workday due to pain and fatigue, but she had no grasping limitations (with either hand), and that the limitations were only temporary. *See* Tr. 380-83. Additionally, the two assessments provided somewhat differing assessments of what Smith could lift and carry: on the first form, Dr. Davies assessed a capacity to lift 11-20 pounds continuously, and 21-25 pounds occasionally; whereas

the second form indicates Smith could lift and carry 6-10 pounds occasionally, 11-20 pounds rarely or never, and 21-50 pounds rarely or never. *Compare* Tr. 372 *with* Tr. 380.

The ALJ found that several factors supported limiting the weight afforded each of these opinions. First, they were inconsistent in describing Smith's lifting restriction. Tr. 24-25. Although Smith argues that the discrepancy is not substantial to warrant wholesale rejection of Dr. Davies' opinions, there is a significant difference between the ability to lift 11-20 pounds *continuously* and lift and carry 11-20 pounds *rarely or never*. Although I acknowledge Smith's suggestion to interpret the evidence differently, the ALJ's interpretation was rational and supported in the record. *See Burch*, 400 F.3d at 680-81. The ALJ also found the reports were inconsistent as to the assessed grasping limitations and the duration of *all* the limitations the doctor assessed, two points which Plaintiff does not appear to contest. Tr. 25. In all, the ALJ did not err in rejecting the opinions as to lifting, carrying, grasping, and duration based on the inconsistencies noted.

Smith argues that Dr. Davies' opinion that she was limited in sitting, standing, and walking to no more than four hours of an eight-hour day was not inconsistent, and should have been adopted in the RFC. *See* Tr. 378-79. However, the ALJ considered and rejected this portion of Dr. Davies' opinion, noting that the doctor did not explain Smith's need for breaks, and the limitations were otherwise unsupported by Dr. Davies' clinical notes. Tr. 25. Review of the record supports the ALJ's finding that Dr. Davies' notes reflect normal gait, no indication of problems standing or walking, and that any positive findings were limited to general pain reports. Tr. 358, 361, 363, 365, 371, 375, 385, 389. The ALJ was not compelled to adopt these limitations because they were not well-supported by clinical findings. *Bayliss*, 427 F.3d at 1216. As such, the ALJ did not err.

**C. Dr. Kruger**

Dr. Kruger performed a consultative examination after the initial ALJ hearing, in July 2014. Tr. 627-37. The doctor concluded Smith could understand and persist at simple tasks, but could not reliably complete multiple-step tasks in an employment setting where she had to deal with the public. Tr. 631. Although the ALJ purported to give "significant weight" to Dr. Kruger's opinion, Smith argues that because the RFC did not adequately encapsulate the limitations the doctor assessed, the ALJ implicitly rejected them. I take up Smith's argument below. *See supra* at IV.

**III. Lay Witness Testimony**

Smith argues the ALJ failed to credit the testimony of the lay witnesses of record, including her current husband, ex-husband, and daughter. *See* Tr. 258-65, 294-96, 299-300. The ALJ summarized each of the lay witness statements, but accorded them little weight. Tr. 26-27. The ALJ provided essentially the same reasoning for rejecting each: although the statements generally tracked Smith's own testimony, the statements were inconsistent with the evidence regarding Smith's mental and physical functioning, and that none of the family members were disinterested parties. Tr. 26-27. In order to reject the testimony of a lay witness, the ALJ is required to provide reasons germane to them for doing so. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 1995). However, where lay testimony is substantially similar to a claimant's symptom allegations, which the ALJ has found not credible, no additional reason is required. *Molina*, 674 F.3d at 1114.

While it was likely improper for the ALJ to rely on the finding that the lay witnesses were not disinterested parties, any error is harmless in light of the ALJ's findings that the testimony was consistent with Smith's testimony that he properly rejected, and that the lay

testimony was inconsistent with the record as a whole regarding Smith's mental and physical functioning. Because the lay witnesses did not describe limitations beyond those that the ALJ properly rejected in the credibility analysis, the ALJ did not err in rejecting the lay witness' similar testimony. *Molina*, 674 F.3d at 1114.

**IV. RFC**

Smith argues the RFC did not adequately encapsulate limitations assessed by Dr. Kruger, whom the ALJ purported to accord significant weight. Specifically, Smith maintains that the RFC limitation: "could sustain . . . simple routine repetitive work of 1-3 steps . . . might be able to engage in more complex tasks on an occasional basis, but could not sustain more complex work," is incompatible with Dr. Kruger's assessed limitation: "simple tasks . . . [but not] multiple step tasks . . . [while] deal[ing] with the public on an ongoing basis." *Compare* Tr. 17 *with* Tr. 631. The difference is important, argues Smith, because the two jobs identified by the ALJ at step five are classified as GED Reasoning Level 2. Tr. 28; *see Dictionary of Occupational Titles* ("DOT"), Fourth Ed., App. C., *available at* 1991 WL 688702.[2] The Ninth Circuit has held that where an ALJ does not recognize an apparent conflict between a claimant's RFC and the jobs identified at step five, the VE cannot address whether any such conflict could be resolved, which could require remand. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (citing *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015)).

Smith argues that the ALJ did not properly translate Dr. Kruger's limitations into the RFC, which created an apparent conflict between the DOT and the jobs identified at step five. An ALJ is responsible for translating and incorporating clinical findings into a succinct RFC. *Id.*

---

[2] **GED Reasoning Level 1**: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job. **GED Reasoning Level 2**: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. *Id.* (emphasis added).

(citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). *Stubbs-Danielson* held that an RFC adequately captures restrictions regarding limitations in concentration, persistence, or pace when it is consistent with restrictions in the medical testimony. *Stubbs-Danielson*, 539 F.3d at 1174. The question, then, is whether Dr. Kruger's assessment is consistent with the RFC. I find that it is.

Dr. Kruger's opinion was multifaceted: he determined that Smith can perform simple tasks, but if a workplace environment required her to deal with the public on an ongoing basis, she would be "challenged" by (but not be precluded from) multi-step tasks. Tr. 631. Thus, absent ongoing public interaction, Smith could perform simple tasks *or* multi-step tasks. *Id.* Importantly, the Ninth Circuit has determined that "simple tasks" are generally consistent with both GED Reasoning Levels 1 and 2. *See Rounds*, 807 F.3d at 996 n.6 (citing *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010); *Abrew v. Astrue*, 303 Fed. Appx. 567, 569 (9th Cir. 2008) (unpublished); *Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. 2008) (mem.); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3rd Cir. 2004) (unpublished)).

Moreover, there is no indication on this record that either of the jobs the ALJ ultimately identified—small products assembler and price marker—required ongoing public interaction; to the contrary, the VE testified that Smith could perform either job despite being limited to no more than "occasional or infrequent" public interaction. Tr. 49-50. Accordingly, any inconsistency between Dr. Kruger's opinion, the DOT, and the RFC and VE testimony was resolved. *Stubbs-Danielson*, 539 F.3d at 1174. Smith has not, therefore, identified any prejudicial harm by the ALJ in translating Dr. Kruger's opinion into a concrete RFC, nor in identifying jobs at step five.

**CONCLUSION**

The ALJ's decision is free of harmful legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this  19th   day of December 2017.

                                               s/ Michael J. McShane
                                                       Michael McShane
                                             United States District Judge